UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ROYCE MINCEY,

                Petitioner,

v.                                            Case No. 3:17-cv-726-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                Respondents.

_____

**ORDER**

**I. Status**

Petitioner Royce Mincey, an inmate of the Florida penal system, initiated this action

on June 20, 2017,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254

(Petition; Doc. 1). In the Petition, Mincey challenges a 2013 state court (Duval County,

Florida) judgment of conviction for attempted second-degree murder. He raises twelve

grounds for relief. See Petition at 20-39.[2] Respondents have submitted a memorandum

in opposition to the Petition. See Answer to Petition for Writ of Habeas Corpus (Response;

Doc. 18). They also submitted exhibits. See Resp. Exs. A-I, Docs. 18-1 through 18-6. The

Court directed Mincey, by October 29, 2018, to either file a reply to the Response or notify

the Court that he did not intend to reply, but instead would rely on his assertions and

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference, the Court will cite the page number assigned by the
Court's electronic docketing system.

claims as stated in the Petition. See Order (Doc. 19). Additionally, the Court advised Mincey that, if he failed to reply or file a notice, the Court would consider the case to be ripe, and all briefing would be closed. See id. Mincey neither filed a reply nor a notice. As such, this case is ripe for review.

## II. Relevant Procedural History

On April 25, 2013, the State of Florida charged Mincey, by Amended Information, with attempted second-degree murder with a weapon. Resp. Ex. B1 at 50-51. At the conclusion of a trial, a jury found Mincey guilty, as charged. Resp. Exs. B1 at 75, Verdict; B2, B3, B4, Transcripts of the Trial Proceedings (Tr.), at 472-73.[3] The circuit court sentenced Mincey to a term of imprisonment of ten years. Resp. Ex. B1 at 109-14, Judgment.

On appeal, Mincey, with the benefit of counsel, filed an initial brief, arguing that (1) the trial court fundamentally erred when it failed to instruct the jury on attempted voluntary manslaughter, as a necessary lesser-included offense one step removed from the offense of conviction, and (2) the State's closing argument, taken as a whole, rises to the level of fundamental error and destroyed Mincey's right to a fair trial. Resp. Ex. B5. The State filed an Answer Brief, see Resp. Ex. B6, and Mincey filed a Reply Brief, see Resp. Ex. B7. On July 2, 2014, the appellate court affirmed Mincey's conviction and sentence per curiam without issuing a written opinion, see Resp. Ex. B8, and the mandate issued on July 18, 2014, see Resp. Ex. B9.

---

[3] The Court will cite the page number in the upper-righthand corner of the transcript.

2

On November 25, 2014, Mincey filed a pro se Motion for Post-Conviction Relief to Obtain DNA Testing pursuant to Florida Rule of Criminal Procedure 3.853, see Resp. Ex. C1 at 1-5, and an Amended Motion for Post-Conviction Relief to Obtain DNA Testing (Rule 3.853 motion), see id. at 6-10, on January 6, 2015. Additionally, Mincey filed a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion) on May 20, 2015. Id. at 88-121. On February 14, 2016, the circuit court denied Mincey's Rule 3.853 motion. Id. at 209-13. On March 2, 2016, the circuit court struck grounds one and two of Mincey's Rule 3.850 motion as facially insufficient and granted him additional time to amend. Id. at 218-21. The appellate court  affirmed the circuit court's denial of Mincey's Rule 3.853 motion per curiam without issuing a written opinion on June 2, 2016, see Resp. Ex. C4, and denied Mincey's motion for rehearing on July 18, 2016, see Resp. Exs. C5; C6. The mandate issued on August 3, 2016. Resp. Ex. C7.

On April 25, 2016, Mincey filed a pro se amended Rule 3.850 motion. Resp. Ex. D1 at 1-38. In his amended request for post-conviction relief, Mincey asserted that counsel (Assistant Public Defender Elizabeth Bright Wallace) was ineffective because she failed to: (1) investigate and consult with experts in serology and deoxyribonucleic acid (DNA) testing to refute the testimony of Jeannelyn Adona (Florida Department of Law Enforcement (FDLE) crime laboratory analyst), id. at 4; retain an expert to review evidence relating to the cause of injury and a forensic pathologist to testify about the effects of the alcohol on Mincey, id. at 8; and object to the prosecutor's "vindictiveness" when she upgraded the aggravated battery charge to attempted second degree murder, id. at 4-10; (2) conduct an independent investigation of the crime, evidence, and potential

witnesses, id. at 10-12; (3) consult with Mincey before she withdrew the plea agreement and waived his speedy trial right, id. at 12-15; (4) object to the admission of the swabs into evidence, and instead entered into "two unreasonable stipulations concerning the swabs," id. at 16; (5) request a jury instruction on the lesser-included offense of attempted voluntary manslaughter by act, id. at 18-21; (6) argue for acquittal based on the fact "the only substantive evidence adduced against [Mincey] at trial" was prior inconsistent statements, id. at 21; and (7) object to the prosecutor's comments during opening and closing statements, id. at 26-34. As ground eight, Mincey argued that counsel was ineffective due to the cumulative effect of her errors in grounds one through seven. Id. at 34-37. The circuit court denied the amended Rule 3.850 motion on May 18, 2016. Id. at 39-300. The appellate court affirmed the circuit court's denial of Mincey's amended Rule 3.850 motion per curiam without issuing a written opinion on December 14, 2016, see Resp. Ex. D2, and denied Mincey's request for additional time to file a motion for rehearing, see Resp. Exs. D3: D4. The mandate issued on January 11, 2017. Resp. Ex. D5.

During the pendency of his amended Rule 3.850 motion, Mincey filed a pro se Motion for Preservation of Evidence and Motion to Bring Forth FDLE Expert Crime Laboratory Analyst and DNA Technician on August 16, 2016. Resp. Ex. G1, exhibits B and C. The circuit court denied the motions on June 16, 2017. Resp. Ex. I.[4]

---

[4] Over the course of the state-court litigation, Mincey filed pro se Petitions for Writ of Mandamus, asking the appellate court to direct the trial court to rule on his motions. Resp. Exs. E1; F1; G1. When Mincey filed his Notices of Voluntary Dismissal, see Resp. Exs. E2; F2; G2, the appellate court dismissed the Petitions, see Resp. Exs. E3; F3; G3.

### III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Mincey's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief

functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable

6

determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited

scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[5] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting

---

[5] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175
L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298
(2017). Also, deferential review under § 2254(d) generally is limited to the record that was
before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster,
563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination
of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners
whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16
(2013). "Federal courts may grant habeas relief only when a state court blundered in a
manner so 'well understood and comprehended in existing law' and 'was so lacking in
justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834
F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a
"difficult" one to meet. Richter, 562 U.S. at 102. A district court's obligation is "to train its
attention" on the legal and factual basis for the state court's ruling, not to "flyspeck the
state court order or grade it." Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335,
1349 (11th Cir. 2019) (citing Wilson, 138 S. Ct. at 1191-92), cert. denied, 140 S. Ct. 394
(2019). Thus, to the extent that the petitioner's claims were adjudicated on the merits in
the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas
action in federal court, a petitioner must exhaust all state court remedies that are available
for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state
remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to

the state's highest court, either on direct appeal or on collateral review. <u>Castille v.</u>
<u>Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim,
"state prisoners must give the state courts one full opportunity to resolve any
constitutional issues by invoking one complete round of the State's established appellate
review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state
> prisoner must exhaust available state remedies, 28 U.S.C. §
> 2254(b)(1), thereby giving the State the "'"opportunity to pass
> upon and correct" alleged violations of its prisoners' federal
> rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887,
> 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v.</u>
> <u>Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438
> (1971)). To provide the State with the necessary "opportunity,"
> the prisoner must "fairly present" his claim in each appropriate
> state court (including a state supreme court with powers of
> discretionary review), thereby alerting that court to the federal
> nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct.
> 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S.  838, 845, 119 S. Ct.
> 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a
procedural default which raises a potential bar to federal habeas review. The United
States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a
> state prisoner's conviction and sentence are guided by rules
> designed to ensure that state-court judgments are accorded
> the finality and respect necessary to preserve the integrity of
> legal proceedings within our system of federalism. These
> rules include the doctrine of procedural default, under which a
> federal court will not review the merits of claims, including
> constitutional claims, that a state court declined to hear
> because the prisoner failed to abide by a state procedural rule.

> See, e.g., Coleman,[6] supra, at 747-748, 111 S. Ct. 2546; Sykes,[7] supra, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[8] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

---

[6] Coleman v. Thompson, 501 U.S. 722 (1991).

[7] Wainwright v. Sykes, 433 U.S. 72 (1977).

[8] Murray v. Carrier, 477 U.S. 478 (1986).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough

v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521

(2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-

clad rule requiring a court to tackle one prong of the Strickland test before the other."

Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be

satisfied to show a Sixth Amendment violation, "a court need not address the performance

prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing

Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is

easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,

which we expect will often be so, that course should be followed." Strickland, 466 U.S. at

697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Grounds One and Three

As ground one, Mincey asserts that his rights to a fair trial and due process of law were violated when the prosecutor (Ms. Vanessa Albaum) made improper comments in

her opening statement. See Petition at 20 (citing Tr. at 158-59). The challenged

comments are as follows.

> Members of the jury. I will murder you. I will murder you
> in your sleep. Bitch, I hope you die and burn in hell. Those are
> the words of this defendant before he grabs an eight-inch knife
> and lunges at the victim, slashing her throat.
>
> It's early morning on October 15th, 2012. The victim,
> Miss Delvena Patterson, she's home, sleeping in her
> apartment with her boyfriend of 18 years, Mr. Edward
> McAllister. There's a knock at the bedroom door. It's the
> defendant. He's drunk. He'd been drinking all weekend and
> he reeks of alcohol. He accuses the victim of stealing money
> from him. He threatens her multiple times, calling her bitch,
> saying, I will murder you in your sleep; I hope you die and burn
> in hell.
>
> He grabs a knife, lunges toward the victim, slashing her
> throat. She falls to the ground, grasping her neck as the blood
> drips down her body.

Tr. at 158-59. Mincey maintains the prosecutor's remarks were improper because there

is a presumption of innocence, and the State has the burden to prove each and every

element of the charge beyond a reasonable doubt. See Petition at 21. According to

Mincey, the prosecutor acted as "an unsworn witness," id. at 20, and was not subject to

cross-examination, see id. at 21. Additionally, as ground three, Mincey asserts that his

due process right was violated when the prosecutor engaged in "unconstitutional burden

shifting." Id. at 23-24.

Respondents argue that Mincey did not exhaust these claims in the state courts,

and therefore the claims are procedurally barred. See Response at 9-12, 14-16. The

Court agrees that the claims have not been exhausted, and are therefore procedurally

barred since Mincey failed to raise the claims in a procedurally correct manner. Mincey

has not shown either cause excusing the default or actual prejudice resulting from the

14

bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming Mincey's claims are not procedurally barred, Mincey is not entitled to relief. As to ground three, Mincey neither alleges any specific facts supporting his claim nor elaborates on how the prosecutor's misconduct shifted the burden of proof. In the state courts, Mincey raised similar claims in ground two on direct appeal, see Resp. Ex. B5 at 35-46; B7 at 12-15, and ground seven of his amended Rule 3.850 motion, see Resp. Ex. D1 at 26-34. In his request for post-conviction relief, Mincey asserted that counsel was ineffective because she failed to object to the prosecutor's improper comments in the opening and closing statements. See id. The circuit court denied the amended Rule 3.850 motion as to the ineffectiveness claims, stating in pertinent part:

> Defendant alleges his counsel was ineffective for [not] objecting to improper statements made during the State's opening statements and closing arguments.[9] These statements allegedly prejudiced Defendant because they shifted the burden of [proof] from the State to Defendant, which stripped Defendant of his presumption of innocence. Furthermore, Defendant contends these statements presented facts not in evidence at trial and were knowingly false so as to inflame the jury.
>
> During closing arguments[,] a prosecutor may point out inferences that can be reasonably drawn from the evidence at trial. Jones v. State, 949 So. 2d 1021, 1032 (Fla. 2006). Likewise, a prosecutor may "state his or her contention relative to what conclusions may be drawn from the evidence." Evans v. State, 838 So. 2d 1090, 1094 (Fla. 2002). "In order for a prosecutor's comments to merit a new trial, the comments must either deprive the defendant of a fair trial and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or

---

9 In his amended Rule 3.850 motion, Mincey cites several excerpts from the prosecutor's opening and closing arguments. See Resp. Ex. D1 at 26-34.

be so inflammatory that they might have influenced the jury to reach a more severe verdict than that [sic] it would have otherwise." Spencer v. State, 649 So. 2d 377, 383 (Fla. 1994). However, while a comment may be improper, a mistrial may not be warranted if the "comment was not so egregious as to fundamentally undermine the reliability of the jury's recommendation." Davis v. State, 604 [S]o. 2d 794, 798 (Fla. 1992). Furthermore, in a postconviction setting, an ineffective assistance of counsel claim asserting a failure of the trial counsel to object to improper comments made by the prosecution can be summarily denied for lack of prejudice when extensive evidence of guilt was presented at the trial. Franqui v. State, 59 So. 3d 82 (Fla. 2011).

The record reflects the victim and Mr. McAllister testified Defendant made threats towards the victim such as "that [expletive] stole my money," "I wish she'd die in her sleep," "[He]'ll cut my throat," "I'd kill her in her sleep," and "I wish she'd burn in hell." (Ex. F at 195-96, 278).[10] Killing and murdering are synonymous; therefore, the State did not argue facts not in evidence, but rather made a reasonable inference from the facts presented at trial. Jones, 949 So. 2d at 1032.

The record further reflects the victim testified she saw the cut inflicted by Defendant in the mirror, and saw skin and flesh hanging from her neck. (Ex. F at 206.) Likewise, Mr. McAllister testified he saw skin hanging off the victim's neck. (Ex. F at 287.) The emergency room physician testified skin and tissue had been cut that required fourteen stitches. (Ex. F at 256-58.) Furthermore, the treating physician testified while the cuts turned out to be non-life threatening, they were located in an area that is sensitive and potentially serious. (Ex. F at 256, 258.) Accordingly, there was record evidence to support the State's comments regarding the victim's injuries.

The record also reflects Ms. Adona testified that the absence of Defendant's DNA on the knife does not mean Defendant did not handle the knife. (Ex. F at 372-74.) Furthermore, the victims testified Defendant handled the knife. (Ex. F at 202-04, 284-91.) Again, the State's opening argument correctly reflects the facts that were eventually produced at trial. The State's recitation of these facts in

---

[10] See Tr. at 195-96 (Delvena Patterson's trial testimony), 278, 352 (Edward McAllister's trial testimony).

opening statements did not shift the burden of proof to Defendant. Instead, the statements merely outlined what the evidence would show.

Defendant also lists a number of other alleged improper statements, which the Court finds did not shift the burden of [proof], elicit sympathy with the jury, or introduce facts not in evidence. Evans, 838 So. 2d at 1094. As none of these comments were improper, counsel cannot be found ineffective for failing to raise a meritless argument. Hitchcock, 991 So. 2d at 361. Moreover, as previously noted above, extensive evidence of guilt was presented at trial via witness testimony. Accordingly, there is no reasonable probability the outcome of the trial would have been different had these comments not been made. Franqui, 59 So. 3d at 82. Based on the above analysis, Defendant has failed to demonstrate deficient performance or prejudice; therefore, Ground Seven is without merit.

Id. at 51-53. The appellate court affirmed the circuit court's denial of Mincey's amended

Rule 3.850 motion per curiam without issuing a written opinion. Resp. Ex. D2.

The United States Court of Appeals for the Eleventh Circuit has stated:

"To find prosecutorial misconduct, a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991). To satisfy the second prong, the prosecutor's improper remarks must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quotation marks omitted); see also Romine v. Head, 253 F.3d 1349, 1366 (11th Cir. 2001) (explaining that "habeas relief is due to be granted for improper prosecutorial argument at sentencing only where there has been a violation of due process, and that occurs if, but only if, the improper argument rendered the sentencing stage trial fundamentally unfair").

In determining whether arguments are sufficiently egregious to result in the denial of due process, we have considered the statements in the context of the entire proceeding, including factors such as: (1)

> whether the remarks were isolated, ambiguous, or unintentional; (2) whether there was a contemporaneous objection by defense counsel; (3) the trial court's instructions; and (4) the weight of aggravating and mitigating factors.
>
> Land v. Allen, 573 F.3d 1211, 1219-20 (11th Cir. 2009) (per curiam) (citing Romine, 253 F.3d at 1369-70).

Conner v. GDCP Warden, 784 F.3d 752, 769 (11th Cir. 2015).

Here, the record reflects that the prosecutor's remarks were not improper. Instead, the prosecutor's comments were an accurate account of the evidence that was ultimately presented. At trial, Patterson and McAllister testified that Mincey threatened the victim and accused her of stealing his money. See Tr. at 195-96, 278, 352. Before the State's opening statement, the trial court instructed the jury as follows:

> Before proceeding further, it will be helpful if you understand how a trial is conducted. At the beginning of the trial, the attorneys will have an opportunity, if they wish, to make an opening statement. The opening statement gives the attorneys a chance to tell you what evidence they believe will be presented during the trial. What the lawyers say is not evidence, and you are not to consider it as such.

Id. at 153. After the State and defense rested their cases, the trial court stated: "Please remember that what the attorneys say is not evidence or your instructions on the law. Id. at 398. After closing arguments, the court instructed the jury, among other relevant legal principles, on the State's burden of proof and the presumption of innocence. See id. at 448-66. It is presumed that the jury reached its verdict solely on the evidence presented and was not improperly influenced by the prosecutor's opening and closing statements. See United States v. Roy, 855 F.3d 1133, 1187 (11th Cir. 2017) ("We have obediently followed and repeated the Supreme Court's direction that we presume juries follow their instructions.") (citations omitted), cert. denied, 138 S. Ct. 1279 (2018). Moreover, even if

the prosecutor's remarks were improper, they did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986). Accordingly, Mincey is not entitled to federal habeas relief on grounds one and three.

### B. Ground Two

Next, Mincey asserts that the trial court erred when it reclassified the original charge (aggravated battery with a deadly weapon) to attempted second-degree murder with a weapon.[11] See Petition at 21-23. According to Mincey, the trial court engaged in "judicial vindictiveness" when it "overlooked" the prosecutor's "reclassification" and "upgrade" of the offense, id. at 22, thus violating his right to due process of law, see id. at 23. Respondents argue that Mincey did not exhaust this federal due process claim in the state courts, and thus, the claim is procedurally barred. See Response at 12-14. The Court agrees that the due process claim has not been exhausted, and is therefore procedurally barred since Mincey failed to raise the claim in a procedurally correct manner. Mincey has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming Mincey's federal due process claim is not procedurally barred, Mincey is not entitled to relief. Mincey raised a similar claim in ground one of his amended Rule 3.850 motion. See Resp. Ex. D1 at 8-9. In his request for post-conviction relief, he

---

[11] See Resp. Ex. B1 at 8 (Information charging Mincey with aggravated battery with a deadly weapon), 50-51 (Amended Information charging Mincey with attempted second-degree murder with a weapon).

asserted that counsel was ineffective because she failed to object to the prosecutor's "vindictiveness" in amending the Information. See id. at 8. The circuit court denied the amended Rule 3.850 motion as to the ineffectiveness claim, stating in pertinent part:

> The record reflects Defendant, the victim, and Edward McAllister, the victim's boyfriend, were all living together at the time of the incident. (Ex. F at 179, 185-86, 268-69.) After a weekend of partying, Defendant had knocked on the bedroom door of the victim and Mr. McAllister, requesting to talk with Mr. McAllister. (Ex. F at 192, 270-76.) Defendant accused the victim of stealing money from him and became irate and belligerent. (Ex. F at 193-96, 276-79.) Tensions temporarily receded, at which time Mr. McAllister went to the kitchen and brought back to the bedroom with him a cantaloupe, paring knife, and fork. (Ex. F at 198-201, 280-82.)
>
> Eventually, Defendant began to get loud and aggressive again, at which point the victim exited her bedroom to verbally confront Defendant. (Ex. F. at 202, 283). Both Mr. McAllister and the victim observed Defendant walk quickly from the kitchen towards the victim carrying a knife. (Ex. F at 202-04, 284-91.) Once he reached the victim, he cut her throat. (Ex. F at 202-04, 284-91.)
>
> . . . .
>
> Lastly, Defendant claims the State was vindictive in amending the information from aggravated battery to attempted second degree murder, because the State knew Defendant was intoxicated. As outlined above, the evidence supported the charge of attempted second degree murder and a jury found Defendant guilty of the offense. The State cannot be faulted for filing charges supported by the evidence. See Rosser v. State, 658 So. 2d 175, 176 (Fla. 3d DCA 1995) (noting that "[i]t is settled that the State may substantively amend its charging document during trial, even over the objection of the defendant, unless there is a showing of prejudice to the substantial rights of the defendant.") No such prejudice existed here. Accordingly, for the above stated reasons, Defendant is not entitled to relief on Ground One.

Id. at 44-46. The appellate court affirmed the circuit court's denial of Mincey's amended Rule 3.850 motion per curiam without issuing a written opinion. Resp. Ex. D2.

The record reflects the following pertinent facts. On November 5, 2012, the State filed an Information, charging Mincey with aggravated battery with a deadly weapon, arising from the October 15, 2012 incident. See Resp. Ex. B1 at 8. The trial court granted the State's motion for continuance, id. at 41, and extended the speedy trial period through May 10, 2013, id. at 42. The State filed an Amended Information, charging Mincey with attempted murder in the second degree (with a weapon), on April 25, 2013, and the trial began on May 6, 2013. The State was permitted to file an Amended Information. See Pezzo v. State, 903 So. 2d 960, 962 (Fla. 1st DCA 2005) (holding that the State may file a charging document at any time within the speedy trial period, and the State may amend an Information after the speedy trial time expires, however, the State may not circumvent the intent and effect of the speedy trial rule by lying in wait until the speedy trial time expires and then amending an existing Information in such a way that results in the levying of new charges); see also Fla. R. Crim. P. 3.191(a) (stating a person charged with a felony must be brought to trial within 175 days of arrest). Additionally, the State's amendment did not prejudice Mincey in the preparation of his defense. See State v. Garcia, 692 So. 2d 984, 986 (Fla. 3d DCA 1997) (stating "the State may amend an information or charging document at any time before or during trial, in the absence of prejudice to the defense"). As such, Mincey is not entitled to federal habeas relief on ground two.

### C. Ground Four

Next, Mincey asserts that his due process right was violated when the prosecutor gave "personal opinions during closing arguments." Petition at 24. He maintains that the prosecutor presented "false facts and failed to correct false testimony" during closing

arguments, thereby violating <u>Giglio v. United States</u>, 405 U.S. 150 (1972). Petition at 24-25 (citing Tr. at 398, 401, 430-31). The challenged comments are as follows.

> **Members of the jury. I will murder you in your sleep. Bitch, die and burn in hell. Those are the defendant's words on October 15th, 2012, before he grabbed that eight-inch knife that you saw today and slashed the victim's throat.**
>
> At this point, you've heard all the testimony and you've seen all the evidence. And the State has proven to you beyond a reasonable doubt that on that date, **this defendant attempted to kill Miss Patterson when he took that knife and lunged it at her throat. . . .**
>
> . . . .
>
> We heard that the witness, **Mr. McAllister, he did grab that knife. The defendant just didn't let go. How did he cut his hand? Because there was some resistance.** He grabbed that knife by the blade to get it away from the defendant.
>
> . . . .
>
> And both the witnesses that took the stand, the victim, Miss Patterson, Mr. McAllister, you heard they have somewhat of a criminal history. They admitted that. **But they were also honest with you, and told you what happened October 15th. We know that th[e] defendant grabbed that knife.**
>
> . . . .
>
> **It's three quick stabs, one arm motion, consistent with how the victim and the defense say, was not able to draw blood in time. That's why there's no blood on the knife.**

Tr. at 398-99, 401, 430-31 (emphasis added).

Respondents argue that Mincey did not exhaust this claim in the state courts,[12] and therefore the claim is procedurally barred. See Response at 16-17. The Court agrees that the claim has not been exhausted, and is therefore procedurally barred since Mincey failed to raise the claim in a procedurally correct manner. Mincey has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming Mincey's federal due process/Giglio claim is not procedurally barred, Mincey is not entitled to relief. Viewing the prosecutor's remarks in context, the statements were not improper in light of the evidence presented at trial. See Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1335 (11th Cir. 2009) ("Accurate statements [in the prosecutor's closing argument] do not violate the Giglio rule."). As such, Mincey is not entitled to federal habeas relief on ground four.

### D. Ground Five

Mincey asserts that appellate counsel was ineffective because she failed to advise him of the availability of certiorari review under the Criminal Justice Act (CJA). Petition at 27. Mincey states in pertinent part:

> Under the "Criminal Justice Act" it clearly states that promptly after the court of appeals decision[,] appointed counsel must advi[s]e the client in writing of the right to seek further review by filing a "writ of certiorari" with the United States Supreme Court . . . .

---

[12] See Petition at 10 (conceding that he did not exhaust the claim).

Id. at 28.[13] Respondents argue that Mincey did not exhaust this claim in the state courts, and thus, the claim is procedurally barred. See Response at 17-18, 49. Again, the Court agrees that the claim has not been exhausted, and is therefore procedurally barred since Mincey failed to raise the claim in a procedurally correct manner.[14] Mincey has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming Mincey's ineffectiveness claim is not procedurally barred, Mincey is not entitled to relief. As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."[15] Strickland, 466 U.S. at 697. Thus, even assuming arguendo deficient performance by appellate counsel (for failing to inform Mincey of his right to file a petition for writ of certiorari with the United States Supreme

---

[13] The Eleventh Circuit's CJA plan requires counsel, upon receiving an adverse decision, to: (1) inform the client of the right to petition the Eleventh Circuit for a panel rehearing or rehearing en banc, or to petition the Supreme Court for certiorari review; and (2) to file such a petition, but only if (a) the defendant requests such a petition in writing, and (b) "in counsel's considered judgment sufficient grounds exist." 11th Cir. CJA Plan, Addendum Four, § (f)(5).

[14] Rule 9.141(d)(5) of the Florida Rules of Appellate Procedure states: "A petition alleging ineffective assistance of appellate counsel on direct review shall not be filed more than 2 years after the judgment and sentence become final on direct review unless it alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel. In no case shall a petition alleging ineffective assistance of appellate counsel on direct review be filed more than 4 years after the judgment and sentence become final on direct review."

[15] Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland. Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).

Court), Mincey has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if appellate counsel had acted as Mincey claims she should have. Accordingly, Mincey is not entitled to federal habeas relief on ground five.

### E. Ground Six

As ground six, Mincey asserts that counsel was ineffective because she waived his right to be present for depositions to perpetuate the testimony of Patterson (the victim) and McAllister in violation of his Sixth Amendment Confrontation Clause right.[16] See Petition at 28-30. Mincey maintains that Patterson and McAllister gave false and inconsistent testimony at trial. See id. at 29 (citing Tr. at 286). Respondents argue that Mincey did not exhaust this ineffectiveness claim in the state courts, and thus, the claim is procedurally barred. See Response at 18-19, 49. The Court agrees that the claim has not been exhausted, and is therefore procedurally barred since Mincey failed to raise the claim in a procedurally correct manner. Mincey has not shown either cause excusing the default or actual prejudice resulting from the bar.[17] Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming Mincey's ineffectiveness claim is not procedurally barred, Mincey is not entitled to relief. In evaluating the performance prong of the Strickland

---

[16] A criminal defendant has the right "to be confronted with the witnesses against him." U.S. Const. amend. VI.

[17] To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 132 S. Ct. at 1309. As discussed in the alternative merits analysis that follows, this ineffectiveness claim lacks any merit. Therefore, Mincey has not shown that he can satisfy an exception to the bar.

ineffectiveness inquiry, there is a strong presumption in favor of competence. See Anderson v. Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005). Thus, Mincey must establish that no competent attorney would have taken the action that his counsel chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

In the instant action, Patterson and McAllister testified at trial. See Tr. at 178-251, 266-353. Defense counsel cross-examined them, see id. at 232-45, 250-51, 321-44, and impeached McAllister with statements he had made in his deposition, see id. at 333-35. Notably, a defendant is not entitled to be present during a discovery deposition pursuant to Florida Rule of Civil Procedure 3.220(h). See Lopez v. State, 888 So. 2d 693, 701 (Fla.

1st DCA 2004) (citing Fla. R. Civ. P. 3.220(h)(7)). On this record, Mincey has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Mincey has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Mincey claims she should have. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Mincey is not entitled to federal habeas relief on ground six.

### F. Ground Seven

Mincey asserts that counsel was ineffective because she misadvised him to: (a) not testify at trial, and (b) reject the State's plea offer. See Petition at 30-31. Respondents argue that Mincey did not exhaust these ineffectiveness claims in the state courts, and thus, the claims are procedurally barred. See Response at 19-21, 50. The Court agrees that the claims have not been exhausted, and are therefore procedurally barred since Mincey failed to raise the claims in a procedurally correct manner. Mincey has not shown either cause excusing the default or actual prejudice resulting from the bar.[18] Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming Mincey's ineffectiveness claims are not procedurally barred, Mincey is not entitled to relief. As ground 7(a), Mincey states that he was not permitted

---

[18] As discussed in the alternative merits analysis that follows, these ineffectiveness claims lack any merit. Therefore, Mincey has not shown that he can satisfy an exception to the bar. See Martinez, 132 S. Ct. at 1309.

"the opportunity to bring clarity to the dark areas of trial hearing testimony" and address

"the inconsistencies." Petition at 30. At trial, the following colloquy ensued.

THE COURT: All right. Mr. Mincey, all I -- you've spoken to your attorneys about your right to testify.

THE DEFENDANT: Yes, I have, Your Honor.

THE COURT: And if you chose to testify, you certainly could. And as you've seen, the witnesses that were called by the State, you would be cross examined -- just like those witnesses were cross examined by your attorneys, you would be cross examined by the prosecutor. Do you understand that, if you took the stand?

THE DEFENDANT: Yes, I do.

THE COURT: And you have a right not to take the stand, and I understand from your attorneys you've elected that right. And if you wish, this is an option that the defendant has; the Court could instruct the jury they're not to consider that in any way. You may remember I've already instructed the jury of your right to remain silent [[19]].

So[,] you've had enough time to discuss this decision with your attorneys?

THE DEFENDANT: Absolutely, Your Honor.

THE COURT: Okay. And you've made a decision with their assistance.

THE DEFENDANT: Yes, I have, Your Honor.

THE COURT: Do you have any questions about your right to testify?

THE DEFENDANT: No, Your Honor.

THE COURT: Okay. All right. Anything else?

---

[19] See Tr. at 156.

Tr. at 388-89.

On this record, Mincey has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Mincey has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had advised him in the manner he suggests. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Mincey is not entitled to federal habeas relief on ground 7(a).

Turning to the merits of ground 7(b), Mincey asserts that counsel misadvised him, causing him to reject the State's 6.75-year plea offer and ultimately receive a ten-year sentence. See Petition at 30. Mincey raised similar claims in grounds one and three of his amended Rule 3.850 motion. See Resp. Ex. D1 at 4-10, 12-15. The circuit court denied the amended Rule 3.850 motion as to these grounds, stating in pertinent part:

> Regarding Defendant's claim that counsel abandoned him by not consulting with him prior to rejecting a plea and seeking a continuance, the record refutes this claim. At a hearing on March 21, 2013, Defendant and the State had reached a negotiated plea deal. (Ex. E at 4-5.)[20]. During the plea colloquy, the State informed the Court that it was aware of DNA evidence that possibly could exonerate Defendant in the form of a preliminary report indicating Defendant was excluded as a possible contributor to DNA found on the knife. (Ex. E at 10-11.) At that point, defense counsel withdrew the guilty plea and asked for a continuance. (Ex. E at 12.) The Court then advised Defendant that a continuance would result in the waiver of speedy trial and temporarily passed the case so counsel could discuss the matter with Defendant. (Ex. E at 12-13.)

---

[20] See D1 at 69-84, March 21, 2013 Transcript; see also B1 at 125-40.

Upon recalling the case, Defendant, under oath, told the Court he "absolutely" agreed with withdrawing the plea and requesting a continuance. (Ex. E at 14.)[21]. Accordingly, not only does the record reflect counsel did consult with Defendant about withdrawing the plea and seeking a continuance, but the record also reflects Defendant agreed with counsel's decisions. Therefore, Defendant is not entitled to relief on this claim. See Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013) (citing Stano v. State, 520 So. 2d 278, 279 (Fla. 1988) (holding that "[a] rule 3.850 motion cannot be used to go behind representations the defendant made to the trial court, and the court may summarily deny post-conviction claims that are refuted by such representations.").

. . . .

Defendant alleges his counsel was ineffective for withdrawing Defendant's guilty plea and waiving his speedy trial rights without first consulting Defendant. According to Defendant, counsel's alleged deficiency caused Defendant to receive a harsher sentence by standing trial and allowed the State to amend the information from aggravated battery to attempted second degree murder.

As explained in the Court's analysis of Ground One, this claim is refuted by the record and without merit. (Ex. E at 4-13.) Not only does the record refute Defendant's claim counsel did not consult with Defendant regarding these two matter[s], but the record specifically demonstrates Defendant agreed to withdraw his plea and waive speedy trial. Accordingly, Defendant has failed to demonstrate deficient performance or prejudice. Therefore, Defendant is not entitled to relief on Ground Three. Kelly, 109 So. 3d at 812-13 (Fla. 1st DCA 2013).

Id. at 43-44, 48.

On this record, Mincey has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even

---

[21] See D1 at 82.

assuming arguendo deficient performance by defense counsel, Mincey has not shown any resulting prejudice.[22] His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Mincey is not entitled to federal habeas relief on ground 7(b).

### G. Ground Eight

As ground eight, Mincey asserts that the post-conviction court violated Florida Rule of Criminal Procedure 3.850 when it denied his ineffectiveness claims based on attached portions of the record that did not refute his claims.[23] See Petition at 31-32. To the extent Mincey raises claims relating to the state collateral proceeding, such challenges do not state a basis for federal habeas relief. Indeed, the Eleventh Circuit Court of Appeals "has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief." Carroll v. Sec'y, Dep't of Corr., 574 F.3d 1354, 1365 (11th Cir. 2009) (citations omitted). "The reasoning behind this well-established principle is straightforward: a challenge to a state collateral proceeding does not undermine the legality of the detention

---

[22] See Lafler v. Cooper, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

[23] See Fla. R. Crim. P. 3.850(f)(5) ("If the motion is legally sufficient but all grounds in the motion can be conclusively resolved either as a matter of law or by reliance upon the records in the case, the motion shall be denied without a hearing by the entry of a final order. If the denial is based on the records in the case, a copy of that portion of the files and records that conclusively shows that the defendant is entitled to no relief shall be attached to the final order.").

or imprisonment -- i.e., the conviction itself --  and thus habeas relief is not an appropriate remedy." Id. (citations omitted).

Moreover, insofar as Mincey intends to raise an ineffectiveness claim, he fails to provide any facts supporting the claim. The Court is unable to decipher the factual basis for the claim and whether he exhausted the claim in the state courts. Therefore, Mincey is not entitled to federal habeas relief on ground eight.

### H. Ground Nine

Next, Mincey asserts that counsel was ineffective because she failed to "conduct reasonable substantial investigations." Petition at 32. According to Mincey, counsel failed to preserve "all available evidence for later testing," impeach witnesses, and consult with a forensic expert. Id. at 32-33. Mincey maintains that he exhausted these claims when he filed his state post-conviction motions pursuant to Florida Rules of Criminal Procedure 3.850 and 3.853.[24] See id. at 33. Respondents argue that Mincey did not exhaust these claims in the state courts, and thus, the claims are procedurally barred. See Response at 21-22. Assuming that Mincey intends to raise the same ineffectiveness of trial counsel claims here that he raised in grounds one and two of his amended Rule 3.850 motion in state court, his ineffectiveness claims are sufficiently exhausted. The circuit court denied the amended Rule 3.850 motion as to the ineffectiveness claims, stating in pertinent part:

> Although Defendant has alleged purported deficiencies on the part of his counsel, Defendant has alleged only conclusory allegations of prejudice and in some instances has not alleged prejudice at all. Accordingly, his claims are legally

---

[24] See Brown v. Sec'y for Dep't of Corr., 530 F.3d 1335, 1337 (11th Cir. 2008) (stating "a Rule 3.853 proceeding involves an application for discovery only, pursuant to which the court lacks authority to order relief from the movant's sentence or conviction based on the DNA test results.").

insufficient because there is not an adequate recitation of factual details outlining how the alleged deficient performance prejudiced Defendant. As previously noted above, the Court has already given Defendant leave to amend his claim, but his amended claim remains legally insufficient. (Ex. D.) Therefore, the Court summarily denies this claim as legally insufficient. Phillip, 14 So. 3d 1244.[25]

Even if prejudice was properly pled, Defendant's claims do not warrant postconviction relief.

. . . .

Regarding Defendant's allegation that counsel's lack of knowledge regarding the DNA evidence demonstrates counsel did not adequately investigate, the record refutes this claim as well. At the March 21, 2013 hearing, the State informed the Court and defense that they had just received a preliminary report on the DNA analysis via e-mail. (Ex. E at 11.)[26] Accordingly, counsel could not have known the results of DNA analysis because the State had just received the results via e-mail and had not shared them with counsel. Therefore, counsel's lack of knowledge regarding the results of the DNA test is not indicative of a failure to adequately investigate. The record further refutes Defendant's contention the report was not preliminary in nature. The State informed the Court at the March 21, 2013 hearing that it was a preliminary report received via e-mail; therefore, it was not the actual final report. (Ex. E at 11.)

Concerning counsel's alleged failure to object to the State's failure to have DNA testing done on a second knife and a fork found at the crime scene, as well as counsel's failure to hire an expert to analyze the items, Defendant cannot demonstrate deficient performance or prejudice.

. . . .

The record is clear the paring knife and fork had no role to play in the attack and were irrelevant. The two witnesses, the victim and Mr. McAllister, both testified the paring knife and fork were in their room when the victim exited the

---

[25] See Phillip v. State, 14 So. 3d 1243 (Fla. 2d DCA 2009).

[26] See Resp. Ex. B1 at 135.

bedroom and Defendant grabbed a knife from the kitchen to cut the victim. Accordingly, as there was no evidentiary value to the paring knife and the fork, counsel cannot be found ineffective for failing to make a meritless argument or objection. Schoenwetter v. State, 46 So. 3d 535, 546 (Fla. 2010).

Defendant next contends counsel should have hired a forensic pathologist to testify that Defendant was physically incapable of forming the general intent required for attempted second degree murder because Defendant was drunk. This claim fails as a matter of law, because voluntary intoxication is not a defense to general intent crimes. Whitfield v. State, 923 So. 2d 375, 379 (Fla. 2005). Attempted second degree murder is a general intent crime. Ramroop v. State, 174 So. 3d 584, 595 (Fla. 5th DCA 2015) (citing State v. Brady, 745 So. 2d 954, 957 (Fla. 1999)). Therefore, Defendant's voluntary[]y intoxication could not be used as a defense. Counsel "cannot be deemed ineffective for failing to raise meritless claims or claims that had no reasonable probability of affecting the outcome of the proceeding." Teffeteller v. Dugger, 734 So. 2d 1009, 1023 (Fla. 1999).

. . . .

Defendant asserts his counsel was ineffective for misleading the jury during her opening statements. In her opening statement, counsel told the jury a DNA analyst tested the knife used to cut the victim. However, Mrs. Adona, the DNA analyst, testified she never had the knife in her custody. Instead, she tested swabs taken from the knife. According to Defendant, this statement by counsel in opening demonstrates his counsel did not adequately investigate the case. Furthermore, Defendant claims his counsel should have investigated the chain of custody of the knife swabs and attack the authentication of the 911 audio recordings.

. . . .

Even if prejudice were properly pled, Defendant's claim is refuted by the record. Jeannelyn Adona, the State's crime laboratory analyst, testified that while she did not perform the actual swabbing of the knife, she did perform the analysis of the swabs taken from the knife. (Ex. F at 362-79.) Accordingly, counsel was correct in her opening statements that the knife had been tested by Ms. Adona, because the DNA sample was

taken from the knife with a swab that Ms. Adona later tested. (Ex. F at 176.) Moreover, the Court informed the jury that opening statements are not evidence, so the jury was aware of the limitations of opening statements and was also able to hear Ms. Adona testify for herself. (Ex. F at 153, 176[.]) Accordingly, even if misleading, any prejudice was cured by the Court and Ms. Adona's own testimony. Defendant has failed to demonstrate deficient performance or prejudice as to this claim.

Regarding the authentication of Mr. McAllister's 911 call, the record reflects Mr. McAllister did authenticate the 911 recording at trial. (Ex. F at 293-312.) Therefore, because any objection would have been without merit, counsel cannot be deemed ineffective for failing to raise a meritless argument. Hitchcock v. State, 991 So. 2d 337, 361 (Fla. 2008). Concerning the chain of custody of the swabs from the knife, the record reflects counsel stipulated to their authenticity. (Ex. F at 371.) Defendant has not alleged an actual break in the chain of custody or otherwise assert[ed] the swabs were contaminated. Defendant has therefore failed to demonstrate any deficient act on the part of counsel or any prejudice arising from a failure to attack the chain of custody. Moreover, two witnesses, including the victim, provided substantial evidence of Defendant's guilt. Therefore, even if contaminated, there is no reasonable probability the outcome of the trial would have been different had the DNA analysis of the knife swabs not been introduced. . . .

Resp. Ex. D at 42-48. The appellate court affirmed the circuit court's denial of relief without issuing a written opinion. Resp. Ex. D2.

To the extent that the appellate court decided the claims on the merits,[27] the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly

---

[27] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1192.

established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Mincey is not entitled to relief on the basis of these ineffectiveness claims.

Nevertheless, even if the appellate court's adjudication of these claims is not entitled to deference, ground nine is without merit. On this record, Mincey has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Mincey has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Mincey claims she should have. His ineffectiveness claims are without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Mincey is not entitled to federal habeas relief on ground nine.

### I. Ground Ten

As ground ten, Mincey asserts that the trial "court erred by not establishing facts under the 'Frye' test without the testimony of a disinterested scientist." Petition at 33-34. Respondents argue that Mincey did not exhaust this claim in the state courts, and thus, the claim is procedurally barred. See Response at 22-23, 55. The Court agrees that the claim has not been exhausted, and is therefore procedurally barred since Mincey failed to raise the claim in a procedurally correct manner. Mincey has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to

identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming Mincey's claim is not procedurally barred, Mincey is not entitled to relief. According to Mincey, Ms. Adona provided improper testimony relating to the contributing factors that cause DNA to be found on an object. See Petition at 34 (citing Tr. at 374). Ms. Adona, the State's crime laboratory analyst, testified as an expert in forensic DNA. See Tr. at 362, 364. During the prosecutor's direct examination, the following colloquy ensued.

> Q    Did you also compare that DNA mixture to the known standard obtained by the defendant?

> A    Mr. Royce Mincey?

> Q    Yes, I apologize. Mr. Royce Mincey, yes.

> A    Yes, I did. I did make comparisons.

> Q    Okay. And what was your finding regarding the comparison with Royce Mincey?

> A    He is excluded as a contributor to the mixed DNA profile obtained from the knife handle.

> Q    When you say "excluded," does that mean that the defendant could not have touched this knife?

> A    No. That just means that his DNA profile is not represented in the mixed DNA profile.

> Q    Are there specific factors that go into whether or not DNA is left behind on an object?

> A    Yes. It depends on how long an item has been handled. It depends if there was enough friction between the skin surface and the item. It also depends if the individual recently washed his hands or if the individual's hands were sweaty. A lot of factors come into play as to when biological material and subsequently DNA would be left behind on an

> item. **It's not a guarantee that if you touch something, you
> will leave DNA behind. Like, if I'm touching this right now,
> it's a possibility that I can leave DNA behind but it's highly
> unlikely.**

Tr. at 373-74 (emphasis added). On cross-examination, defense counsel questioned Ms.

Adona about the fact that Mincey was excluded as a possible contributor to the DNA

found on the knife handle. See id. at 376-84. The following colloquy ensued.

> Q      Okay. Now, you talked about some reasons why
> somebody may not leave behind DNA on something they
> touch. Of course, one of the most obvious reasons why
> someone may not leave behind DNA on an item is because
> they never touched the item, is that correct?
>
> A      That's fair to say.

Id. at 384. As the post-conviction court stated, Mincey's DNA was not found on the knife,

and therefore, "the lack of his DNA on [the] knife helped, not hurt, his case." Resp. Ex.

D1 at 49. Nevertheless, the victim and McAllister testified that Mincey handled the knife.

See Tr. at 202-05, 284-91. On this record, the trial court did not err. Ms. Adona's testimony

was neither inadmissible nor improper. Moreover, Ms. Adona's testimony did not include

any novel scientific evidence which should have been subjected to the Frye test.[28] As

such, Mincey is not entitled to federal habeas relief on ground ten.

---

[28] Under Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), an expert scientific
opinion must be based on techniques that have been generally accepted by the relevant
scientific community and  have been found to be reliable. See id. at 1014. A Frye hearing
is appropriate to determine the admissibility of a "new or novel" scientific principle. See
Branch v. State, 952 So. 2d 470, 483 (Fla. 2006) (citation omitted); Herlihy v. State, 927
So. 2d 146, 147 (Fla. 1st DCA 2006) (citations omitted).

**J. Ground Eleven**

Next, Mincey asserts that the state appellate court violated his due process rights when it affirmed the circuit court's denial of his post-conviction motions under Florida Rules of Criminal Procedure 3.850 and 3.853 without issuing written opinions. See Petition at 35-37. Notably, "there is no AEDPA requirement that a state court explain its reasons for rejecting a claim." Hittson, 759 F. 3d at 1232. The United States Supreme Court has instructed that "[s]ection 2254(d) applies even where there has been a summary denial." Cullen, 563 U.S. at 187 (citing Richter, 562 U.S. at 98). As such, Mincey is not entitled to federal habeas relief on ground eleven.

**K. Ground Twelve**

As ground twelve, Mincey asserts that the trial court erred when it improperly instructed the jury on the governing legal principles. See Petition at 38-39. Respondents argue that Mincey did not exhaust this claim in the state courts, and thus, the claim is procedurally barred. See Response at 21-22, 53-55. On review of the record, the Court finds that the claim has not been exhausted, and is therefore procedurally barred since Mincey failed to raise the claim in a procedurally correct manner. Mincey has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming Mincey's claim is not procedurally barred, Mincey is not entitled to relief. The Eleventh Circuit has held that "errors in state jury instructions are federal constitutional issues only where they render the entire trial fundamentally unfair." Erickson v. Sec'y, Dept. of Corr., 243 F. App'x 524, 528 (11th Cir. 2007) (citing Jones v. Dugger,

888 F.2d 1340, 1343 (11th Cir. 1989)); see also Jamerson v. Sec'y for Dep't of Corr., 410 F. 3d 682, 688 (11th Cir. 2005) ("Unlike state appellate courts, federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, 'so infected the entire trial that the resulting conviction violate[d] due process.'") (citations and quotations marks omitted). Mincey has not shown how the trial court's jury instructions, see Tr. at 152-58, 448-68, rendered his trial fundamentally unfair. As such, Mincey is not entitled to federal habeas relief on ground twelve.

### VII. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Mincey seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Mincey "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the

petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Mincey appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of July, 2020.

**MARCIA MORALES HOWARD**
United States District Judge

sc 7/27
c:
Royce Mincey, FDOC # 135775
Counsel of Record